UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
LOUIS LAMARCHE,

                               Appellant,

    -against-

BOBBY MILES,

                               Appellee.

------------------------------------------------------------- x

MEMORANDUM AND ORDER

06-CV-05795 (ENV)

VITALIANO, D.J.

On May 12, 2006, debtor Bobby Miles ("Miles") filed a Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of New York. Thereafter, Louis Lamarche ("Lamarche"), his landlord and a creditor, made several attempts to lift the automatic stay imposed pursuant to 11 U.S.C. § 362(d)(1) to pursue various landlord/tenant claims against Miles. Following a creditors' meeting on the proposed Chapter 13 plan, and asserting legal fortification from certain statements made by the debtor at that meeting, Lamarche again moved to lift the automatic stay to pursue eviction proceedings against Miles—this time on the theory that Miles was engaging in rent gouging his roommate and, therefore, was subject to damages and the forfeit of his tenancy pursuant to New York rent stabilization laws. See generally N.Y. COMP. CODES R. & REGS. tit. 9, subt. S, ch. 8.[1] On August 29, 2006, after a hearing, Bankruptcy Judge Carla E. Craig denied appellant's motion to vacate the stay, relying in part on Lamarche's failure (1) to raise these allegations of tenant wrongdoing during plan confirmation proceedings

---

[1] But see First Hudson Capital, LLC v. Seaborn, 54 A.D.3d 251, 252, 862 N.Y.S.2d 501, 502 (1st Dep't), appeal dismissed, 11 N.Y.3d 894, 873 N.Y.S.2d 270, 901 N.E.2d 764 (2008)(holding that landlord lacked cause of action under rent stabilization laws to evict tenant for charging roommate more than proportional share of rent).

1

and (2) to object to plan confirmation itself. Lamarche then filed this appeal. On that appeal, the order is affirmed.[2]

## BACKGROUND

Lamarche owns an apartment house located at 450 Clinton Avenue in Brooklyn, New York, where Miles is the tenant of a rent-stabilized apartment unit. Miles was declared the tenant of record with right of succession in that unit after a holdover proceeding had been commenced against him by Lamarche in the residential landlord/tenant part of New York City Civil Court, Kings County ("Civil Court" or "Housing Court").[3] Lamarche then commenced an eviction proceeding against Miles for non-payment of rent. Before any judgment was issued, Miles filed the underlying individual Chapter 13 petition, which stayed the second eviction proceeding.[4] Lamarche received notice of the Chapter 13 bankruptcy proceeding, notice of the automatic stay imposed by 11 U.S.C. § 362,[5] notice that a meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled for June 22, 2006, and notice of the confirmation hearing, pursuant to 11 U.S.C. § 1324.

In the bankruptcy court, Lamarche moved for relief from the automatic stay under

---

[2] On January 8, 2009, Judge Craig signed a stipulation between the parties which 1) vacated the automatic stay "with regard to [Miles's] payment of rent accruing after the date of the filing of the petition herein" and 2) "acknowledged receipt of rent from Miles for August, September, and October of 2008 in the amount of $1685.54." The stipulation effectively lifts the automatic stay with respect to any post-petition default (after May 12, 2006) in rent payments made by Miles. As to those matters alone, the appeal is moot.

[3] After the previous tenant of record's death, the holdover proceeding was brought against Miles, who had then resided in the unit for more than 18 years. On October 14, 2005, the Civil Court awarded Miles the right of succession to the apartment. See Lamarche v. Miles, No. 04-078102 (N.Y. Civ. Ct., Kings County, Oct. 14, 2005).

[4] In re Miles, Case No. 06-41519 (E.D.N.Y. May 12, 2006).

[5] Commencing a Chapter 13 proceeding insulates debtors by staying state court proceedings under 11 U.S.C. § 362(a).

11 U.S.C. § 362(2), basing his show of "cause" on the failure of Miles to pay post-petition rent in the amount of $494.72 per month since filing the Chapter 13 petition. On July 20, 2006, Judge Craig entered an order conditionally vacating the automatic stay. The conditional order directed Miles to pay Lamarche $813.25 for the May 2006 and June 2006 rent owed and to remain current with his rent payments. Miles complied with that order and the automatic stay remained in place. Meanwhile, a meeting of creditors was held pursuant to 11 U.S.C. § 341 ("341 meeting") on June 22, 2006. At the 341 meeting, Miles stated that his roommate, Dennis Gumbs, had been renting one of bedrooms in the apartment for a number of years, and paid between $445 to $400 per month to Miles for rent and other expenses, such as utilities (the full rent-stabilized monthly rent for Miles's apartment was $508.33).[6] Miles further testified at the 341 hearing that Gumbs owed him $6000 in rent arrears since 2004 and that he did not accept payment of rent from Gumbs during his pending non-payment proceeding or prior to the bankruptcy filing. Moreover, Miles admitted at the 341 meeting that he had not listed the $6000 debt owed by Gumbs as an asset on Schedule B in his initial bankruptcy filing. The trustee therefore directed Miles to submit an amended Schedule B. Miles filed the amendment in July

---

[6] The submissions are inconclusive regarding the exact amount and what portion constituted rent and what portion constituted payment of other expenses and arrears. Miles contends that the amount of current rent paid by Gumbs was $254 per month with the balance applied towards arrears and utilities. (Record on Appeal at 219-20)[hereinafter R.]. Lamarche argues that the inconsistency in Miles's statements regarding rent payments made by Gumbs are sufficient to demonstrate "cause" to lift the automatic stay. He also argues that the failure of the debtor to submit affidavits from himself and Gumbs illuminating the bankruptcy court and this Court as to the proper allocation of the amounts paid by Gumbs bolsters the appellant's argument that the inconsistency in the record constitutes cause for lifting the stay. This affidavit argument is not addressed by Miles directly, though he testified consistently under oath at the 341 meeting that the amount tendered by Gumbs each month constituted a portion of rent as well as "other things". In any event, all that was in issue was whether relief from the automatic stay should be granted to allow pursuit of eviction. The fact that there may be a *bona fide* fact dispute as to matters relevant to such a claim (eviction and/or damages for rent gouging) that might be brought in Housing Court if the stay were to be lifted does not provide "cause" for lifting the stay.

2006, listing a right of action against Gumbs for rental arrears for $6000.[7] Next, on August 4, 2006, Lamarche filed his motion below for an order vacating the automatic stay so that he could move forward with eviction proceedings against Miles on the strength of the information Miles disclosed at the 341 meeting regarding rent paid and owed by Dennis Gumbs, which, Lamarche argues, supports his contention that Miles rent gouged Gumbs.

Four days later, a hearing on the confirmation of the Chapter 13 plan was held. Lamarche did not attend the hearing, nor did he file any objections to plan confirmation. Without objection, the bankruptcy court confirmed the plan on August 10, 2006, finding that, after notice and hearing, Miles had satisfied the plan confirmation requirements of 11 U.S.C. § 1325(a). (R. 218). Less than three weeks after that, on August 29, 2006, Judge Craig held a hearing on Lamarche's motion to vacate the automatic stay, denying it on the record. That denial is the subject of this appeal.

## DISCUSSION

### I. Automatic Stay

Commencing a Chapter 13 proceeding insulates debtors by staying state court proceedings to which a debtor is a party. See 11 U.S.C. § 362(a). The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws." H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6296. It protects both debtors and creditors by giving debtors a "breathing spell from his creditors" by stopping "all collection efforts, all harassment, and all foreclosure actions" and preventing creditors from pursuing their

---

[7] Amended Schedule B, entitled "Personal Property" includes items such as savings bonds, household goods, and apparel owned by Miles. A "Right of Action against Roommate for back Rent" (sic) in the amount of $6000 is listed in the amended Schedule B. (R. 209-11).

4

own remedies against the debtor's property "to the detriment of other creditors." H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6297. The automatic stay also furthers the objective of bankruptcy, which is to "provide an orderly liquidation procedure under which all creditors are treated equally." Id. It bars the "commencement or continuation, including the issuance of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed." Id. With respect to Chapter 13 petitions, an automatic stay remains in place until a case is either closed or dismissed, or a discharge is granted or denied. 11 U.S.C. 362(c). See also In re Davis, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986)(citing duration of automatic stay and finding that creditor was not relieved from automatic stay after the debtor's Chapter 13 plan was confirmed).

Under 11 U.S.C. 362(d)(1), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . **for cause**, including the lack of adequate protection of an interest in property of such party in interest." (emphasis supplied). The burden of proof on a motion to lift or modify an automatic stay is a shifting one. Once the movant establishes the initial required showing of "cause", the burden of proof shifts to the debtor. 11 U.S.C. § 362(g)(1). "Cause" is neither defined by the statute nor its legislative history; however, the Second Circuit catalogued a non-exclusive list of factors to be weighed in deciding whether litigation should be permitted to continue in another forum, see In re Sonnax Industries, Inc. v. Tri Component Corp., 907 F.2d 1280, 1286 (2d Cir. 1990) (citing In Re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)) ("Sonnax factors"), including the following:

(1) whether relief would result in a partial or complete

5

resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

"Sonnax does not expressly require specific consideration . . . each of the factors: 'only those factors relevant to a particular case need by considered . . . and the Court need not assign them equal weight.'" In re Burger Boys, Inc., 183 B.R. 682 (S.D.N.Y. 1994) (citing In re Helen Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) and In re Keene Corporation, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)).

In the context of a tenant's obligations to make payments to a landlord where a Chapter 13 petition has been filed, "cause" can arise when a tenant fails to make post-petition

payments or to otherwise meet his rental obligations. See, e.g., In re Watkins, 2008 WL 708413, at *4 (E.D.N.Y. Mar. 14, 2008). However, when a debtor complies with the plan and makes timely payments in accordance with it, a bankruptcy court may determine under Sonnax that there is insufficient "cause" to lift the automatic stay—that is, absent default or similar deprivation of "adequate protection" to the creditor, there is no cause to lift the stay. See In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008)("The terms of the plan as confirmed fix the legal rights of the parties and the only cause for relief from the stay after confirmation is the debtor's material failure to adhere to the payment terms set forth in the plan") (internal citation omitted).

## II. Standard of Review

Bankruptcy judges have wide discretion in determining whether to lift an automatic stay or to deny such a motion. In re Boodrow, 126 F.3d. 43, 47 (2d. Cir. 1997). Denial of relief from an automatic stay, nonetheless, is a final appealable order. See In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir. 1989)(stating that such denials are the equivalent of a permanent injunction). Under 28 U.S.C. § 158, a district court has jurisdiction to hear appeals from orders of bankruptcy judges and reviews a decision of a bankruptcy court on a motion to lift an automatic stay. Id. Since the ultimate determination on whether to lift a stay "depends upon the facts underlying a given motion," In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002), the bankruptcy court's grant or denial of a motion to lift an automatic stay is reviewed for abuse of discretion. In re Sonnax Industries, Inc. v. Tri Component Corp., 907 F.2d 1280, 1286 (2d Cir. 1990) ("[W]e may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion") (internal citation omitted). A bankruptcy court

7

abuses its discretion when its decision is based either on an erroneous view of the law or by making clearly erroneous factual findings. Sears, Roebuck & Co. v. Spivey, 265 B.R. 357, 364 (E.D.N.Y. 2001)(internal citation omitted).

### III.     Effect of Chapter 13 Confirmation

Lamarche argues that he had sufficiently demonstrated "cause" to Judge Craig, as required by section 362(d)(1), to warrant the lifting of the stay, which would allow his pursuit of eviction proceedings against Miles. In advancing this argument, Lamarche specifically contends that the bankruptcy court abused its discretion by improperly considering his failure to object to the confirmation of Miles's Chapter 13 plan in deciding that he was not entitled to relief from the stay.

The parties, however, do not substantially address the effect that Chapter 13 plan confirmation, by itself, has on a motion for relief from an automatic stay decided after plan confirmation. Notwithstanding, as a general rule, any such confirmation binds the debtor and each creditor as to each matter resolved, as well as those that could have been resolved, in the plan. See 11 U.S.C § 1327(a)(stating that plan confirmation binds both debtor and creditor). This is true whether or not a creditor's claim has been provided for in the plan and whether or not the creditor has objected to, accepted, or rejected the plan. Id. But, while plan confirmation is "a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality," In re Fili, 257 B.R. 370, 372 (1st Cir. 2001), and while many courts have acknowledged that plan confirmation can severely restrict a creditor's ability to obtain relief from the automatic stay, there is no bright-line rule as to whether confirmation of a plan always forecloses post-confirmation motions seeking relief from an automatic stay. See In re Pizzullo, 33 B.R. 740

(E.D. Pa. Bankr. 1983)(finding that *res judicata* effect of plan confirmation applied as to all justiciable issues which could have been decided at the confirmation hearing but not to matters occurring after confirmation that could warrant relief from stay); In re Britton, 35 B.R. 373, 377 (N.D. Ind. 1982)(granting post-confirmation relief from automatic stay on appeal and stating that the Court found "no authority for the argument that failure to timely object to the confirmation of a Chapter 13 plan also prevents an interested party from requesting relief from the automatic stay"). See also Hon. W. Homer Drake, Jr., Hon. Jeffrey W. Morris & Adam M. Goodman, Chapter 13 Practice and Procedure § 11:10 271-75 (Supp. 2008) (stating that courts have come to varying conclusions concerning the effect of confirmation on a subsequent attempt to obtain relief from an automatic stay and that "no generally applicable rule has evolved" on this issue).

Timing, however, is critical here. Appellant claims that the basis for his August 4, 2006 motion to vacate the stay was not discovered prior to the 341 meeting, justifying post-confirmation relief. Alternatively, he argues that, contrary to the bankruptcy court's assertion, he did, in fact, raise this issue prior to the plan's confirmation. Both bases reject the proposition that plan confirmation forecloses such a motion by its *res judicata* effect.

Lamarche's first point is unavailing. As a general rule, newly discovered evidence does not preclude the *res judicata* effect that plan confirmation has on the obligations, rights, and property of the debtor and his estate. In re Layo, 460 F.3d 289, 293 (2d Cir. 2006). This principle is steadfast unless the "new" evidence was fraudulently concealed or could not have been timely discovered with due diligence. Id. But even assuming *arguendo* that the information cited by appellant was not reasonably discoverable prior to the 341 meeting, the 341 meeting itself did, perforce, precede plan confirmation. Further, Miles was directed by the trustee, prior to confirmation, to amend the schedule of personal property he owned. Miles did

9

just that, listing a right of action against Gumbs for rental arrears. Therefore, such information was, or should have been, known by Lamarche prior to plan confirmation. And, more critically, what is in issue on appeal is Judge Craig's consideration of his failure to raise the alleged rent gouging by debtor at the confirmation hearing. Any temporal nexus to the 341 meeting is actually irrelevant. The *res judicata* effect of the plan is not undermined by a late discovery claim where the discovered information was actually known, it is uncontested, prior to confirmation.

The alternative argument asserted by Lamarche, which is factually inconsistent with his prior argument, fares no better. While Lamarche did, prior to the plan's confirmation, apparently raise allegations of Miles's alleged rent gouging in the context of his August 4, 2006 motion to vacate the automatic stay, (see Docket Entry No. 18, Aug. 8, 2006), Lamarche conceded at the motion hearing before Judge Craig, (Tr. at 8-9), that at no point did he object to the plan's confirmation or raise rent gouging in the context of the confirmation proceedings, even though he was aware of the existence of such a claim.[8]

The overarching fact remains, however, that Lamarche failed to object to what had, at the time his motion was decided, already become a confirmed Chapter 13 plan in which creditor and debtor alike could find finality and be assured of a settled and orderly resolution of the claims against the debtor. That plan effectively provided for debtor's continued tenancy in appellant's building and for the continued payment of rent and rent arrears. The long and short

---

[8] Lamarche contends here that his motion to vacate the automatic stay should, in any case, be construed as an objection to plan confirmation itself. It is another contention for which Lamarche has cited no authority, nor has the Court discovered any. Such a level of clairvoyance is not required by the bankruptcy laws. Practically, regardless when Lamarche's motion was noticed, it was argued, submitted, and decided after plan confirmation. The Court rejects appellant's brazen suggestion that Judge Craig should have treated his yet to be heard motion in the stead of an actual objection he could have easily asserted but chose not to assert at the proper time.

of it was that appellant's motion to lift the stay was sought to enable him to subsequently attack that very same tenancy in state court.

Clearly, the *res judicata* effect of plan confirmation, in and of itself, is sufficient to warrant disposal of the instant appeal. See In re Layo, 460 F.3d 289 (2d Cir. 2006)(affirming district court's reversal of bankruptcy court decision, finding that *res judicata* applied to post-confirmation attacks on mortgage liens provided for in a Chapter 13 confirmed plan). But, the bankruptcy court went even further. Judge Craig not only considered plan confirmation but considered it *in addition* to other factors enumerated in Sonnax to conclude that Lamarche was not entitled to relief from the automatic stay. In this still brighter illumination of plan confirmation, the Court finds no impropriety. Whether or not necessary, it was not error for the bankruptcy court to further consider Lamarche's failure to object to the confirmation plan, along with a myriad of other Sonnax factors implicated by such failure, in determining that "cause" was not shown by appellant.

The broader view of the record does not change the essential: the debtor's Chapter 13 plan effectively provided for his continued tenancy in appellant's building and for the continued payment of rent and rent arrears while appellant's motion to lift the stay was sought to enable him to attack that very state tenancy in state court. Because of the *res judicata* effect of the plan, post-confirmation relief from the automatic stay should be considered only if the relief that is sought is in furtherance of the plan and not in derogation of it. See In re Lemma, 394 B.R. at 323 (stating that the only post-confirmation cause for relief from an automatic stay to a creditor is the debtor's material failure to adhere to plan terms). In short, therefore, whether as a result of the plan's *res judicata* effect alone or bolstered from the broader view of appellant's laches at confirmation, the Court finds no abuse of discretion in the bankruptcy court's denial of

Lamarche's request to lift the automatic stay.[9]

## IV. Application of Sonnax factors

Judge Craig's order, moreover, is in full harmony with Sonnax. See, e.g., In re Burger Boys, Inc., 183 B.R. at 688 (stating that "Sonnax did not expressly require specific consideration of the...factors nor did it consider each one" and that "other courts have expressly held that Sonnax does not require consideration of each of the factors). Sonnax recognizes, in fact, the wide discretion of the bankruptcy court to determine, based on the facts and circumstances of each case and with the assistance of its guidelines, whether "cause" exists to grant relief from the automatic stay. Here, it is evident from the record that the bankruptcy court had substantively considered the relevant factors enumerated in Sonnax, including, i) the balance of harm to the parties, (ii) the expertise and propriety of a forum, (iii) interests of efficient and judicious disposition of the issues, and (iv) the effect of the creditor's requested proceeding on the pending bankruptcy proceedings, including the potential interference and disruption to the Chapter 13 plan.

Pointedly, this is not a case where the bankruptcy court failed to consider Sonnax. Cf. In re Mazzeo, 167 F.3d 139, 143 (2d Cir. 1999) (remanding to bankruptcy court when bankruptcy court lifted automatic stay when no factual evidence was presented to bankruptcy court that would permit evaluation under Sonnax). That Judge Craig was cognizant of the factors enumerated in Sonnax is clear. For instance, at the August 29, 2006 hearing to vacate the stay, Judge Craig engaged in the following colloquy with debtor's counsel:

---

[9] The relatively recent rent-related stipulation of the parties is in furtherance of the landlord/tenant relationship between appellant and debtor provided for in the plan. It too is wholly inconsistent with relief from the automatic stay to facilitate a potential assault by appellant on that very same tenancy.

12

| Mr. Barasch: | Well, first of all, Section 362 as a basis for lifting the automatic stay, is for generally egregious circumstances, for cause. |
| --- | --- |
| The Court: | For cause. |
| Mr. Barasch: | And the question is has the movant proved – proven that the stay should be lifted for cause? They bootstrapped an argument based on one question that was raised at the Section 341 meeting. |
| The Court: | But isn't that something that should—that the Housing Court should be deciding? Wouldn't—isn't—don't I look at this in the same way that I would look at a request to prosecute litigation against the debtor in another forum under *Sonax* (ph) [sic]? |

Tr. at 5 (Aug. 29, 2006).

It is precisely on this score that Lamarche's assertion that the bankruptcy court improperly weighed his failure to raise the issue of rent gouging at the plan confirmation meeting is without merit. The disruption and unsettling of a confirmed Chapter 13 plan is a highly significant consideration in determining whether "cause" exists to lift an automatic stay. It was Lamarche's stated intent to seek relief from the stay to attack the tenancy of the debtor that was being administered by the plan. That such a proceeding in Housing Court could potentially interfere with the administration of that plan is manifest. Especially in this context, it was not improper for the bankruptcy court to consider Lamarche's failure to object, grounded in debtor's alleged rent gouging, to plan confirmation and to advance his position that the tenancy should be terminated rather than administered. The recalcitrant objector was seeking permission to raise in a state court forum the precise objection he failed to raise at confirmation and to terminate the very landlord/tenant relationship administered in the plan. *Sonnax* allows that litigation strategy

to be assayed on the motion to lift the stay.

Additionally, it is clear from the transcript of the August 29, 2006 hearing before Judge Craig that a host of other <u>Sonnax</u> factors were also implicated.[10] For instance, the Court inquired as to whether the Housing Court was the proper forum to litigate the issues of alleged rent gouging and whether those issues would be dealt with more judiciously and efficiently in that court – a consideration embodied in several of the <u>Sonnax</u> factors. Furthermore, in weighing the harm to Lamarche by keeping the automatic stay in place against vacating the stay to allow eviction proceedings to go forward, Judge Craig asked Lamarche's counsel how his client was prejudiced by the bar on prosecution of his alleged rent gouging claims when he was receiving current rent payments which were being made in accordance with the Chapter 13 plan. (Tr. at 7). That information too was before the bankruptcy court when it rendered its decision.

All in all, it was entirely reasonable for Judge Craig to conclude that, since the facts underlying Lamarche's allegations of rent gouging against Miles were known to him prior to plan confirmation, that had Lamarche "felt that this was – that this was of concern, he could have – this is something that he could have and should have raised." (Tr. at 9). Stated differently, the plan as proposed handled Lamarche's rent-related claims differently from the claim he sought to advance in state court and for which he moved for relief from the stay. That difference was resolved by the *res judicata* effect of the plan. The time to litigate any dispute about that difference was prior to plan confirmation; the method—first by objection to the Chapter 13 plan; the forum of objection—the bankruptcy court. Upon timely objection, Judge Craig could have ruled on Lamarche's claim or, indeed, lifted the stay to allow Lamarche to

---

[10] The <u>Sonnax</u> factors are guidelines. They are not exclusive factors for determining cause. But even assuming, *arguendo*, that they are exclusive, Lamarche's failure to object to plan confirmation fits squarely into the <u>Sonnax</u> framework.

14

pursue his claim in Housing Court and return to bankruptcy court with state court resolution of any landlord/tenant claim *before* plan confirmation. Judge Craig was, plainly, entitled to consider both the failure to press a parallel objection at the confirmation hearing as well as the disruption to the confirmed plan that would result from a lifting of the stay to pursue landlord/tenant claims post-confirmation, all essentially arising out of pre-petition conduct and/or the debtor's conduct during the bankruptcy proceeding.

In sum, this Court finds no reason to conclude that the bankruptcy court abused its discretion in denying Lamarche's motion for relief from the stay to pursue eviction proceedings against Miles that, if successful, would interfere with the administration of a confirmed plan. Specifically, this Court finds no error below in the weighing of the Sonnax factors, including the bankruptcy court's consideration of Lamarche's failure to object to the plan confirmation, in rejecting appellant's motion to lift the stay. Indeed, there is ample support in the record (*res judicata* and otherwise) to affirm Judge Craig's denial of appellant's motion for failure to establish "cause" justifying relief from the automatic stay.

## CONCLUSION

The bankruptcy court's order denying Lamarche's motion to vacate the automatic stay is affirmed. The Clerk is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2009

ERIC N. VITALIANO
United States District Judge